UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD RASH, | Case No.: 26v0008-LL-DEB |
| Petitioner, | |
| v. | **ORDER GRANTING MOTION TO ENFORCE COURT ORDER** |
| CHRISTOPHER J. LAROSE, et al., | |
| Respondents. | [ECF No. 8] |

Before the Court is Petitioner Mohammad Rash's Motion to Enforce Court Order. ECF No. 8. Respondents filed a response opposing the motion. ECF No. 12. For the reasons set forth below, the Court **GRANTS** the Motion.

I.    BACKGROUND

Petitioner is a citizen of Iran who fled the country after being tortured by the government for his political views. ECF No. 1. ¶¶ 16–18. Petitioner entered the United States on November 18, 2024 and was immediately detained by the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). *Id*. ¶ 19. Petitioner is currently detained in Otay Mesa Detention Center under 8 U.S.C. § 1225(b)(1)(B)(ii). ECF No. 4 at 2.

On January 30, 2026, this Court granted Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 after finding that Petitioner's prolonged detention without a bond hearing violated the Fifth Amendment's Due Process Clause. ECF No. 6. The Court ordered Respondents "to arrange an individualized bond hearing before a neutral immigration judge in which the government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released." *Id*. at 10. On February 2, 2026, a bond hearing was held before an immigration judge ("IJ") pursuant to this Court's order. Mot. at 4; Opp'n at 1.

According to Petitioner, however, Respondents failed to provide a "constitutionally compliant hearing as ordered by this Court." Mot. at 3. For instance, the IJ stopped the DHS attorney while he was presenting his case and instead listed out concerns that the IJ believed argued against Petitioner's release. Mot. at 10. Petitioner claims that DHS provided no evidence of flight risk and that DHS attorney's only argument regarding flight risk was that Petitioner had no sponsor or residence address, which was later corrected by Petitioner's attorney. *Id*. at 12. According to Respondents, DHS argued that Petitioner was a flight risk "because although he was granted deferral of removal to Iran, Petitioner was also ordered removed to Turkey and could be removed there." Opp'n at 3.

Petitioner also claims that DHS submitted "a series of articles and reports about the designation of the Iranian Military as a terrorist group." Mot. at 12. Petitioner asserts that he was conscripted into this organization, never received weapons training, and played the saxophone in the organization's band. Mot. at 12. According to Petitioner, DHS did not make any showing that Petitioner himself was a danger. *Id*. Respondents do not dispute this. *See generally* Opp'n.

Ultimately, the IJ denied bond, finding that Petitioner was a danger to the community and a flight risk. ECF No. 12-1 at 1. Petitioner did not file an appeal with the Board of Immigration Appeals ("BIA") because Petitioner believed "that would be futile." Mot. at 5. On March 25, 2026, Petitioner filed the instant motion to enforce court order, asking the

2

26cv0008-LL-DEB

Court to immediately release him because Respondents failed to prove danger and flight risk by clear and convincing evidence. Mot. at 4, 6–13, 15.

## II.   DISCUSSION

### A.   Jurisdiction

Respondents argue that the Court should dismiss Petitioner's motion for lack of jurisdiction. Opp'n at 8. Petitioner argues that the Court has continuing jurisdiction to enforce an order." Mot. at 5. For the reasons set forth below, the Court agrees with Petitioner.

While courts in general do not have jurisdiction to review "denial of bond" under 8 U.S.C. § 1226(e), this provision does not preclude courts' "habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (citations omitted); *see also Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) ("a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review [] bond hearing determinations for constitutional claims and legal error"). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241." *Hernandez*, 872 F.3d at 987 (cleaned up).

Here, Petitioner is claiming that the IJ did not provide him with a "constitutionally compliant" bond hearing in violation of the Due Process Clause. Mot. at 9. Specifically, Petitioner argues that the IJ failed to place the burden of clear and convincing evidence on the government and shifted the burden on Petitioner. *Id*. at 9–11. However, "in bond hearings for [noncitizens] detained under 8 U.S.C. § 1225, as a matter of due process, IJs must place the burden on the government to prove by clear and convincing evidence that the [noncitizen] is either a flight risk or danger to the community." *Bayani v. LaRose*, No. 26-CV-0266-JES-VET, 2026 WL 1270059, at *5 (S.D. Cal. May 8, 2026) (citing *Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690, at *5 (S.D. Cal. Mar. 5, 2026) (collecting cases)).

26cv0008-LL-DEB

Thus, this Court has jurisdiction to review Petitioner's motion. *See e.g., Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *2 (S.D. Cal. Apr. 16, 2026) (holding that the district courts have jurisdiction to whether an IJ's bond determination comported with constitutional due process protections); *Mendoza v. Noem*, No. CV 25-3227-MWF(AGR), 2026 WL 923311, at *2 (C.D. Cal. Apr. 1, 2026) ("the Court retains jurisdiction to review constitutional or legal errors putatively made during bond hearings under 28 U.S.C. § 2241"); *Kharis v. Sessions*, No. 18-CV-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) ("a district court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional.")

## B. Exhaustion

Respondents argue that Petitioner was required to exhaust administrative remedies by appealing his bond determination to the BIA before bringing the instant motion to enforce judgment. Opp'n at 4–8. Petitioner argues that exhaustion is not required in the context of a motion to enforce a court order and further that exhaustion would be futile. Mot. at 5. For the reasons set forth below, the Court agrees with Petitioner.

First, the bond hearing at issue was conducted pursuant to an order from this Court, which stated that the "government bears the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or a flight risk if released." ECF No. 6 at 10. Petitioner argues that Respondents did not meet this "heavy burden" (Mot. at 6, 8), and thus, Respondents' failure to comply with the terms of that Order is an issue appropriately addressed by a motion to enforce the Court's order. *See e.g., Bayani*, No. 26-CV-0266-JES-VET, 2026 WL 1270059, at *5 (excusing exhaustion "for purposes of reviewing compliance with the Court's prior order for a bond hearing."); *Kumar v. Noem*, No. 1:26-CV-01148-DJC-AC, 2026 WL 983129, at *3 (E.D. Cal. Apr. 13, 2026) ("Respondents' failure to comply with the terms of that Order by applying the standard expressly included in the terms of the Order is an issue appropriately addressed by a motion to enforce the Court's order."); *Sales v. Johnson*, No. 16-CV-01745-EDL, 2017 WL

4

6855827, at \*6–7 (N.D. Cal. Sept. 20, 2017) (holding that exhaustion was not required for a motion to enforce judgement where the deadline to appeal to the BIA had passed).

Second, the case Respondents rely on, *Leonardo v. Crawford*, is distinguishable because in that case, the district court found that the government had "complied exactly" with the court's order by providing a bond hearing. 646 F.3d at 1159. That is not the case here. Moreover, the Ninth Circuit states in *Leonardo* that exhaustion can be "excused." *Leonardo*, 646 F.3d at 1160. "In the context of petitions for writ of habeas corpus for immigration detainees under 2241, 'exhaustion is a prudential rather than jurisdictional requirement.'" *Bayani*, No. 26-CV-0266-JES-VET, 2026 WL 1270059, at \*4 (quoting *Singh*, 638 F.3d at 1203 n.3). Exhaustion of administrative remedies may be required where: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

However, even in cases where all three *Puga* factors favor prudential exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). Similarly, the exhaustion requirement can be waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing*, 370 F.3d at 1001 (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

Here, Respondents argue that Petitioner should be required to exhaust administrative remedies before seeking relief here because all three Puga factors weigh in favor of exhaustion: (1) agency expertise is required; (2) waiving exhaustion would encourage other detainees to bypass the BIA; and (3) if there was an error, BIA would correct the agency

26cv0008-LL-DEB

mistake. Opp'n. 4–6. As discussed above, however, even in cases where all three *Puga* factors favor exhaustion, a court may waive the prudential exhaustion requirement. Petitioner argues that his failure to exhaust administrative remedies should be excused because an appeal to the BIA would be "futile and not required in this instance." Mot. at 5. The Court agrees. Thus, this Court will waive the exhaustion requirement for the limited scope of determining whether the bond hearing was constitutionally adequate as required by this Court's prior order and not delve into areas of discretionary decisions made by the IJ.

### C.   Merits

The Court now considers whether Petitioner's bond hearing was legally and constitutionally adequate. The Court finds that it was not.

#### 1. Legal Standard

Federal courts have "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *see also Leonardo*, 646 F.3d at 1161 ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). Without this authority, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Peacock*, 516 U.S. at 356 (quoting *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187 (1867)).

When reviewing an immigration custody determination in habeas proceedings, the district court must apply an abuse of discretion standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024) ("When questions require a close review of agency-found facts, like the 'dangerousness' determination [in an immigration custody hearing], we review for an abuse of discretion."). In doing so, the court "cannot reweigh evidence but can only determine whether the [IJ] applied the correct legal standard." *Id.* at 785 (cleaned up). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981.

/ / /

## 2. Petitioner's Bond Hearing

Petitioner argues that the IJ failed to place the burden of clear and convincing evidence on the DHS at the bond hearing, in violation of his due process rights. Mot. at 9–13. Respondents do not directly refute this argument but state that the bond hearing was compliant with the court's order. *See* Opp'n at 1. The Court agrees with Petitioner.

Generally, courts will "accept that the [IJ] 'applied the correct legal standard' if the [IJ] 'expressly cited and applied the relevant caselaw in rendering its decision'" unless "there is an indication that something is amiss." *Martinez*, 124 F.4th at 785 (quoting *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009)). However, "the IJ's mere recitation of the applicable legal standard is not enough when the IJ's decision makes it clear . . . that the IJ did not actually apply the standard in his reasoning and decision." *Ramos-Portillo v. McAleenan*, No. EDCV180260MWFSS, 2019 WL 3246499, at *1 (C.D. Cal. July 19, 2019). "It is the application of the clear-and-convincing standard, not its recitation, that matters." *Id.*; *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.")

Here, the IJ acknowledged the burden on the DHS in her opening statement, but she "never stated in her oral decision that DHS had met their burden of clear and convincing evidence." Mot. at 9, 11. Respondents do not directly dispute this claim. *See generally* Opp'n. They merely state that "the IJ considered the evidence presented, found that Petitioner was a danger to the community and flight risk, and explained her reasoning on the record." Opp'n at 3. However, a "mere recitation" of the legal standard is insufficient to show that the IJ actually applied the burden.

Moreover, Petitioner claims – and Respondents do not dispute – that the "IJ stopped the DHS counsel from presenting his case. Instead, she listed out six points of [Petitioner's] preexisting docket that she believed argued against release." *Id*. at 10. However, it was DHS' burden, not the IJ's to argue against Petitioner's release. "[A]n immigration judge

26cv0008-LL-DEB

has a responsibility to function as a neutral, impartial arbiter and must be careful to refrain from assuming the role of advocate for either party." *Bayani*, No. 26-CV-0266-JES-VET, 2026 WL 1270059, at *7 (quoting *Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006).

That the IJ did not correctly apply the burden on DHS is further corroborated by the lack of evidence supporting the IJ's finding that Petitioner was a "[d]anger to community and flight risk" (ECF No. 8-4 at 2). First, the DHS counsel submitted "a series of articles and reports about the designation of the Iranian Military as a terrorist group" but did not submit any evidence that Petitioner *himself* was a terrorist or a danger. ECF No. 8 at 10. Again, Respondents do not dispute this. *See generally* Opp'n. However, Petitioner was conscripted into this organization, did not receive any weapons training, and played the saxophone in the organization's band. ECF Nos. 8 at 10; 8-1 at 3. In fact, the IJs have dismissed similar tenuous evidence when there was no additional evidence to support dangerousness. *See e.g.*, *N.A. v. Warden, Adelanto Detention Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *7 (C.D. Cal. Apr. 15, 2026) (the IJ held that having "similar tattoos" that was common among members of a terrorist organization without more was not sufficient to show danger); *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) (holding that "the IJ's finding of present dangerousness was an error of law and the denial of bond was inappropriate" where "only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward").

Second, Petitioner claims, and DHS do not dispute, that DHS did not proffer any *evidence* of flight risk; their only *argument* was that there was no sponsor or residence address for Petitioner, which was inaccurate because those had been provided by Petitioner's counsel and was thereafter corrected by Petitioner's counsel. ECF Nos. 8 at 10; 8-1 at 3. Respondents claim that the IJ found Petitioner to be a flight risk because he could still be removed to Turkey or a third country. Opp'n at 3. However, this conjecture is not a "clear and convincing evidence." Therefore, the Court finds that the IJ construed evidence (or the lack of evidence) against Petitioner even though DHS had presented no evidence to support the IJ's decision.

26cv0008-LL-DEB

**D.      Remedy**

"Habeas is at its core a remedy for unlawful executive detention. [Citation.] The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "Federal courts have a fair amount of flexibility in fashioning specific habeas relief." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Indeed, federal courts have broad discretion to remedy unlawful detention "as law and justice require." 28 U.S.C. § 2243; *Schlup v. Delo*, 513 U.S. 298, 319 (1995) ("[H]abeas corpus, is at is core, an equitable remedy"). "Moreover, . . . equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973).

Based on the facts of this case, "another bond hearing would serve little purpose and would only prolong a detention that has already become constitutionally problematic." *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026). Therefore, this Court finds no basis for Petitioner's continued detention and follows the courts across the country that have ordered the immediate release of detainees in similar situations. *See e.g.*, *Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (releasing the petitioner subject to reasonable conditions of supervision); *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026); *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *11–12 (C.D. Cal. Mar. 5, 2026) (ordering habeas petitioner's immediate release after finding immigration judge abused their discretion); *W.T.M. v. Bondi*, No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026) (ordering immediate release after determining that the bond determination hearing was "constitutionally defective"); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (ordering habeas petitioner's immediate release from custody "[g]iven the due process violations that pervaded his bond hearing[.]").

26cv0008-LL-DEB

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Motion to Enforce Court Order. Respondents are **ORDERED** to immediately release Petitioner within twenty-four (24) hours under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5. Respondents may not re-detain Petitioner without compliance with 8 C.F.R. § 241.4(l)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED**.

Dated:  May 19, 2026

_____

Honorable Linda Lopez
United States District Judge

26cv0008-LL-DEB